**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 26 2007

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-30044 |
| | ) | |
| Gregory K. Pfahler, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 15] and Debtor's objection [Doc. # 24]. A hearing was held that Debtor, his counsel and counsel for the UST attended in person. The court has jurisdiction over this case pursuant to 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts the case to a Chapter 13.

### BACKGROUND

The following facts are not in dispute. Debtor is married and has two adult children, ages 19 and 23. He is employed as a sales representative at Lake Erie Medical, where he has worked for over 16 years. His wife has worked at Medical Mutual of Ohio for 4 years. On January 5, 2007, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, which states that his debts are primarily

consumer debts. His bankruptcy schedules show secured debt in the amount of $130,030 and unsecured nonpriority debt, consisting entirely of credit card debt, in the amount of §110,298,[1] and no priority unsecured debt.

Debtor's Schedule I shows total monthly income after payroll deductions for both Debtor and his wife in the amount of $4,247. In addition, Debtor's 2005 net income tax refund (federal income tax refund less state income tax owed) was $1,600. His amended Schedule J shows total monthly expenses in the amount of $4,227, an increase of nearly $1,000 over the expenses reported on his original Schedule J. Debtor's reported expenses include total monthly car payments of $359, a student loan payment in the amount $145, and $200 for incidental living expenses for his son at college. Debtor concedes that the student loan is his son's loan for which he and his wife have no legal responsibility to pay. Also, according to Debtor, the total car payments include payments for three vehicles, one of which is for his son who is away at college and for which Debtor pays $100 per month.

The UST filed a timely motion to dismiss for abuse, arguing both that a presumption of abuse arises under § 707(b)(2) and that the totality of the circumstances of Debtor's financial situation demonstrates abuse under § 707(b)(3). Because the court finds that the totality of the circumstances demonstrate abuse as contemplated under § 707(b)(3), it does not address the § 707(b)(2) argument.

## **LAW AND ANALYSIS**

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") because it was filed on January 5, 2007, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these

---

[1] Although Schedule F lists debts totaling $210,737, Debtor lists as creditors both the credit card company and the party handling the collection of the debt. Thus, the debts for all but one credit card are duplicated on the schedule.

2

concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA, Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtor filed his petition in bad faith but instead contends that the totality of the circumstances show that Debtor has the ability to repay a significant portion of his unsecured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In this case, the court finds that Debtor has the ability to repay a meaningful portion of his unsecured debt. He enjoys stable employment, being employed at the same job for over sixteen years and there being no indication that he is in danger of losing his job or that he anticipates a material decrease in income within the next five years. Debtor is currently paying nearly $350 per month for a car and for living expenses for his adult son who is away at college. While a parent's desire to assist a child who is pursuing a college degree is laudable, a debtor is not free to do so at the expense of his unsecured creditors. *See U.S. Trustee v. Harrelson*, 323 B.R. 176, 179 (Bankr. W.D. Va. 2005) (finding debtors' budget that included their adult children's college expenses to be unreasonable as they were under no duty to pay for such expenses); *In re Staub,* 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000) (agreeing that "educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors"); *In re Studdard*, 159 B.R. 852, 856 (Bankr. E.D. Ark. 1993) (holding that debtors who have the

ability to repay their debts could not continue to fund their children's college tuition and living expenses to the detriment of their creditors). This principle has not changed under BAPCPA. Applying these funds alone to repayment of unsecured creditors over sixty months, a period that coincides with the applicable commitment period of a Chapter 13 plan for above median income debtors, *see* 11 U.S.C. § 1325(b)(4), would yield a total payment of $21,000. As Debtor's unsecured debt totals $110,298, an amount less than the limits for eligibility for relief under Chapter 13, and his schedules show no unsecured priority debt, unsecured creditors may potentially receive a dividend of approximately 18% under a Chapter 13 plan, or more if claims are not filed by all creditors as frequently occurs. In addition, Debtor received an income tax refund of $1,600 in 2005. To the extent similar refunds are anticipated in the future, unsecured creditors may receive an even higher dividend.

Accordingly, the court finds that, based on these facts, granting Debtor relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the totality of his financial circumstances. *See In re Behlke,* 338 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b) [Doc. # 15] be, and hereby is, **GRANTED**. Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed by separate order of the court.